## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ESTHERLENE HOLMES,          )
                                     )
            Plaintiff,         )
                                     )
      v.                    )      No. 03 C 6897
                                     )
BOARD OF EDUCATION OF WEST      )      Judge Rebecca R. Pallmeyer
HARVEY-DIXMOOR SCHOOL DISTRICT  )
NO. 147; J.C. SMITH; MICHAEL SMITH;  )
MABLE CHAPMAN; HELEN RANDALL;   )
DOROTHY WHITTED; IANDUS HAMPTON; )
and DR. ALEX BOYD, JR.,          )
                                     )
            Defendants.     )

### MEMORANDUM OPINION AND ORDER

Plaintiff Estherlene Holmes ("Plaintiff" or "Holmes") filed this suit against her former employer, the Board of Education of West-Harvey School District # 147; against Superintendent Dr. Alex Boyd, Jr.; and against Board members J.C. Smith, Michael Smith, Mable Chapman, Helen Randall, Dorothy Whitted, and Ilandus Hampton ("Defendants") on September 30, 2003. She alleges violations of 42 U.S.C. § 1983, and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Specifically, in Count I, Plaintiff alleges that the Board violated her procedural due process rights by failing to give her an adequate per-termination hearing. In Count II, she alleges that Defendants interfered with the exercise of her rights under the FMLA by (1) failing to notify her of her rights under the Act, in violation of 29 U.S.C. §§ 2615 and 2619, and 29 C.F.R. §§ 825.300 and 825.301, and (2) terminating her in January 2001 for absences when she was entitled to FMLA leave.[1]

Defendants now move for summary judgment. For the reasons set forth below, the motion

---

[1] In its Minute Order of April 8, 2004, this court dismissed Plaintiff's federal substantive due process claim. It also dismissed as time-barred Plaintiff's claim for intentional infliction of emotional distress. Finally, it granted without prejudice Defendants' motion to dismiss Plaintiff's claim for intentional interference with contractual relations.

for summary judgment is granted in part and denied in part.

## **FACTUAL BACKGROUND**[2]

Plaintiff worked as a teacher in the West-Harvey School District from August 1996 until her discharge in 2001. (Def.'s 56.1 ¶ 1.) As explained below, the precise date of discharge is disputed, but it is clear that Plaintiff stopped reporting to work on August 25, 2000, and that by October 1, 2001, when the Board voted for a second time to terminate her, she had been away from work for more than a year. (Def.'s 56.1 ¶ 6; Pl.'s Resp. 56.1 ¶ 6.) The summary judgment record focuses on communications between the parties during this period.

**Plaintiff's Leave of Absence**

On or about August 30, 2000, Plaintiff submitted a doctor's note prepared the previous day by her physician, Dr. Kenneth Cline, to Superintendent Alex Boyd. (Doctor's note, Ex. B to Def.'s 56.1; Deposition of Estherlene Holmes, Ex. C to Def.'s 56.1 (hereinafter "Holmes Dep."), at 12.) Dr. Cline's note reported that Plaintiff "was seen in the office for Hypertensive urgency. She should refrain from working until her medical regimen has been adjusted to control her [blood pressure]. Will have her return in 2 weeks for repeat visit." (Doctor's note, Ex. B to Def.'s 56.1)

On October 13, 2000, Donita Lewis, a payroll clerk, sent Plaintiff a letter on behalf of the District. (Verified Statement of Donita Lewis, Ex. 1 to Def.'s 56.1 Reply (hereinafter "Lews Aff.") at ¶¶ 1, 5.) The letter notified Plaintiff that her 36 sick days were exhausted. (October 13, 2000, letter from Ms. Lewis to Ms. Holmes, Ex. A to Def.'s 56.1.)[3] It directed her to request a medical leave of absence and submit documentation from her physician explaining her continuing illness, certifying her inability to work, and estimating her date of return. (*Id.*) The letter also invited Plaintiff to apply

---

[2]     The court takes relevant facts from Defendant's Statement of Material Facts ("Def.'s 56.1"); Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp. 56.1"); and Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Def.'s 56.1 Reply").

[3]     The record does not identify the date Plaintiff used her last day of sick leave.

for disability benefits with the Teachers' Retirement System of Illinois ("TRS") if she were unable to return soon. (*Id.*) Plaintiff did in fact apply for TRS disability benefits on November 16, 2000. (Def.'s 56.1 ¶ 11; Complaint ¶ 7). Superintendent Boyd testified that, in addition to Ms. Lewis's letter, he himself had one or two telephone conversations with Plaintiff between October 13, 2000, and December 8, 2000, in which he sought additional information about her expected date of return. (Deposition of Alex Boyd, Jr., Ex. G to Def.'s 56.1 (hereinafter "Boyd Dep.") at 9-10.)

Defendants maintain that the District received no documentation of Plaintiff's illness in response to these requests for information prior to December 8, 2000. (Def.'s 56.1 ¶ 14.) Plaintiff asserts, however, that she provided Donita Lewis with a copy of her disability application, including a medical certification, with instructions that Ms. Lewis give the application to Superintendent Boyd. (Verified Statement of Estherlene Holmes, Ex. A to Pl.'s Resp. 56.1 (hereinafter "Holmes Aff.") ¶ 8.) As evidence, she cites a TRS "Employer's Statement of Disability" form signed by Ms. Lewis on November 16, 2000, in her capacity as Payroll Officer, (Employer's Statement of Disability, Ex. B to Pl.'s Resp. 56.1), and a Physician's Certification of Disability signed by Dr. Cline (Physician's Statement of Disability, Ex. B to Pl.'s Resp. 56.1).[4] The "Employer's Statement of Disability" is a TRS form requesting information about the applicant's dates of employment, sick leave, taken, workers' compensation, and teaching duties. Ms. Lewis checked "yes" in response to a question asking whether the employee's disability was the sole reason the employee had been removed from the payroll. Ms. Lewis acknowledges receiving the Employer's Statement of Disability form from Plaintiff a few weeks after sending the letter of October 13, 2000, but denies that form was accompanied by the Physician's Certification. (Lewis Aff. ¶ 7.) According to Defendants, the

---

[4] The instructions for the Employer's Statement of Disability direct the employer to "[c]omplete and return this form to the Teacher's Retirement System." The instructions for the Physician's Certification form, however, direct the physician to "[c]omplete and send this original form to TRS," not the employer. Plaintiff had not explained why she nevertheless provided the Physician's Certification form, filled out by Dr. Cline, to the School District through Ms. Lewis.

School District did not receive a copy of the Physician's Certification until an unspecified date after Plaintiff's termination, during the discovery phase for Plaintiff's dismissal hearing. (Def.'s 56.1 Reply at 4.)

On the Physician's Certification form, Dr. Cline checked boxes indicating that Plaintiff suffered from temporary, moderate mental impairment (specifically, impairment to cognitive ability and to stamina or fatigue), and a box indicating the estimated future duration of Plaintiff's impairment as 0-6 months. Under "Present function limitations," Dr. Cline stated that "Pt has had poorly controlled HTN[5] & states she is incapacitated due to side effects associated [with] anti-HTN meds." Dr. Cline checked a box indicating that Plaintiff was unable to perform her present employment while undergoing treatment, but he failed to answer several other questions on the Physician's Certification form, including: whether the patient's condition clearly came within the stated eligibility requirements; whether the impairment had been continuous since the patient became unable to work; whether any tests had been done; the nature of the course of treatment; and the date when the patient would be able to return to work, if known. Finally, in the "Additional Information" section, in a space provided for "Additional Comments," Dr. Cline wrote that "[d]espite multiple changes in prescribed regimen, pt still complains of significant functional loss. She has been referred to a cardiologist for a 2nd[] opinion."

On December 8, 2000, Superintendent Boyd sent a letter to Plaintiff, advising her that she had exhausted all leaves normally granted[6] and that he had not received notification of a condition or situation that warranted Plaintiff's continued absence. (Letter from Boyd to Holmes, Ex. E to

---

[5]     This court infers that "HTN" is an abbreviation for "hypertension."

[6]     The letter does not identify which leaves are "normally granted," but Superintendent Boyd testified that the leaves normally granted include sick leave and personal leave. (Boyd Dep. at 11.) According to Plaintiff, her sick leave lasted through part of October 2000 and she was not paid after she had exhausted her sick leave. (Holmes Dep. at 14) She did, however, receive disability benefits which the Teacher's Retirement System made retroactive to the date she applied in November. (*Id.*)

Def.'s 56.1) Superintendent Boyd warned that unless he received a physician's statement detailing Plaintiff's need to be away from her duties, the Board would address her termination for job abandonment on January 8, 2001. (*Id.*)

Plaintiff responded to Superintendent Boyd's request for information by submitting the following statement from Dr. Cline, dated December 19, 2000:

> Ms. Holmes has been seen in my office since February of 1999, for refractory hypertension. Despite multiple adjustments in her blood pressure medication, the patient states that she has significant fatigue related to her medication which has made it difficult for her to resume her normal work activity. Due to her significant side effects associated with the anti-hypertensive medications, I have referred her to a cardiologist for a second opinion in hopes that she will be able to achieve a blood pressure regimen which will control her blood pressure and allow her to resume her work duties. Hopefully the patient will be able to achieve an adequate balance between achieving aggressive control of her blood pressure without significant side effects. I have been unable to obtain an adequate balance between her medications, but hopefully her visit with the cardiologist will help in achieving that delicate balance.
>
> Please feel free to contact me if you have any specific questions concerning her previous medical history.

(Letter from Dr. Cline "to whom it may concern" (hereinafter "Dr. Cline's letter"), Ex. B to Def.'s 56.1 Reply.)

In Superintendent Boyd's view, Dr. Clines statement did not contain the information Plaintiff was required to provide. (Boyd Dep., Ex. G to Def.'s 56.1 at 16-17.) Superintendent Boyd does not recall whether he told Plaintiff herself that he considered the information in Dr. Cline's letter to be insufficient, but he testified that he called Dr. Cline in December or January and asked when Plaintiff would be able to return to her duties. (*Id.* at 16.) Dr. Cline did not provide him with that information or with any additional information. (*Id.* at 15-16.)

On December 22, 2000, Plaintiff went to Superintendent Boyd's office for a scheduled meeting to discuss her medical condition. (Plaintiff's Statement of Additional Facts (hereinafter "Pl.'s Add. Facts") ¶ 18.) Superintendent Boyd arrived for the meeting at least fifteen minutes late. (Verified Statement of Dr. Alex Boyd, Jr. (hereinafter "Boyd Aff."), Ex. H to Def.'s 56.1 Reply at ¶ 8.).

He found that Plaintiff had departed (*id.*; Pl.'s Add. Facts ¶ 19), leaving a handwritten note in which she requested a medical leave of absence:

> Dr. Boyd,
>
> I am requesting a medical leave of absence until such time as I can find a medicine that does not have such devastating side effects. I will be seeing a different doctor when he returns from vacation on January 8.[7] Hopefully he can prescribe a medicine I can tolerate since he is a cardiologist.
>
> As soon as I am released, I expect to rush back to my children. If a proper remedy is not found by June, I will retire.
>
> Sincerely,
> Estherlene Holmes

P.S. Please refer to the doctor's statements dated August 29 and December 19.

(Undated note from Holmes to Boyd, Ex. C to Pl.'s Add. Facts.) The note contained no new medical information and, in Dr. Boyd's view, Plaintiff's reference to the possibility of retiring in June did not satisfy his request for an estimated date of return.  (Boyd Dep. at 39-40.)  Plaintiff asserts that Superintendent Boyd never responded to her request for medical leave, (Holmes Aff. ¶ 12), and Superintendent Boyd himself has no recollection of having done so. (Boyd Dep. at 18-19.)

**January 2001 Board Decision**

On January 4, 2001, Superintendent Boyd sent another letter to Plaintiff, informing her that he would recommend her dismissal at the January 8, 2001 Board meeting. (Def.'s 56.1 ¶ 17) Neither side has provided the court with a copy of this letter.  According to Plaintiff, the letter did not state any reasons for Superintendent Boyd's recommendation, nor explain what Plaintiff needed to do to avoid termination.  (Pl.'s Resp. 56.1 ¶ 17)

The Board adopted a motion to dismiss Plaintiff at its January meeting.  Defendants assert that the Board voted to dismiss Plaintiff for job abandonment and insubordination, (Def.'s 56.1 ¶ 18), but the record does not identify the nature of the purported insubordination, and as Plaintiff points out, the minutes of the meeting record a vote to dismiss Plaintiff immediately for job

---

[7]     The record contains no information concerning any visit to a cardiologist in January.

abandonment alone. (Pl.'s Resp. 56.1 ¶ 18.) The minutes show that the vote was unanimous but show little else. (Minutes of January 8, 2001 meeting (hereinafter "January minutes"), Ex. E to Pl.'s Resp. 56.1.) They do not record the nature of any discussion, nor the documentation introduced in support of the motion. Superintendent Boyd himself does not recall what documentation, if any, he submitted to the Board in support of the resolution (Boyd Dep. at 28-29), nor does any such documentation appear in the record.

Plaintiff testified that she received a letter dated January 9, 2001 from Superintendent Boyd, advising her of the vote. (Holmes Dep. at 25.) Neither side has furnished a copy of this letter, either. In response to the Board's decision, on January 16, 2001, Plaintiff requested a hearing pursuant to 105 ILCS 5/24-12, which governs the removal or dismissal of teachers in contractual continued service. (Pl.'s Add. Facts ¶ 33.)[8]

Defendants now claim that at some point the Board rescinded its decision to terminate Plaintiff and notified her of this decision. (Boyd Dep. at 47.) Superintendent Boyd testified that he had "no idea" when the Board notified Plaintiff of the decision, but was "sure" it was within a week or two after the Board's January meeting. There is no written record of this rescission notice, however, and Plaintiff denies receiving any such notice. (Holmes Aff. ¶ 16.)[9] Dr. Boyd explained that the Board rescinded its decision to terminate Plaintiff when it received legal advice that the

---

[8]    In her complaint, Plaintiff alleged that she was terminated on October 1, 2001 (Complaint ¶ 2), but in opposition to the motion for summary judgment, she contends that she was terminated on January 8, 2001. (Plaintiff's Memorandum in Opposition to the Defendants' Motion for Summary Judgment (hereinafter "Pl.'s Opp'n. Mem.") at 4; Pl.'s Add. Facts ¶ 35.) She explains the apparent contradiction by casting the October 1, 2001 decision described *infra* as a reaffirmation of the January 8, 2001 decision. (Pl.'s Opp'n. Mem. at 5.)

[9]    Superintendent Boyd acknowledges that he never wrote Plaintiff a letter advising her that the Board's decision was rescinded, but believes that such a letter was written by counsel for the Board. (Boyd Dep. at 22.) Superintendent Boyd could not say when such an offer was sent (*id.* at 47), however, and no copy of any such letter appears in the record.

Board needed to offer her the opportunity to "remediate." (Boyd Dep. at 47.)[10]

On March 28, 2001, Superintendent Boyd sent a letter to Plaintiff acknowledging that she had "actively protested a previous decision of the Board of Education that [she] had abandoned [her] employment with the District." (Letter from Boyd to Holmes, Ex. A to Def.'s 56.1 Reply). The court infers this was a reference to the Board's January 8, 2001 decision. The letter does not describe how Plaintiff had actively protested that decision, however, nor does it make any reference to rescission of the Board's January 2001 decision or a subsequent offer to remediate. Boyd's letter explained that in order for the Administration to determine her future employment status, Plaintiff must provide a physician's statement setting out her diagnosis, prescribed treatment, and her anticipated date of return. (*Id.*) Boyd gave Plaintiff ten days to provide the requested information and warned her that "[f]ailure to provide this report within the time specified will lead to disciplinary action." (*Id.*) The letter does not specify what disciplinary action was contemplated.

On April 6, 2001, the Teachers' Retirement System approved disability benefits for Plaintiff, effective from October 24, 2000 through a period equal to one-fourth of her creditable service.[11] (Letter from TRS to Holmes, Ex. H to Def.'s 56.1). In her letter, Claims Supervisor Jana Bergschneider explained that disability payments would terminate if Plaintiff were no longer disabled, if she resumed teaching, if she obtained alternative gainful employment, after she had received payment of benefits for more than one-fourth of her creditable service, or if she elected to accept a disability or age retirement annuity. (*Id.*) The letter stated that it was Plaintiff's

---

[10]     The parties have not explained what the term "remediate" means in this context, but 105 ILCS 5/24-12 provides that, when grounds for discharge are "remediable," the subject of a disciplinary proceeding has certain procedural protections: "Before setting a hearing on charges stemming from causes that are considered remediable, a board must give the teacher reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges; however, no such written warning shall be required if the causes have been the subject of a remediation plan pursuant to Article 24A." 105 ILCS 5/24-12. Article 24A concerns routine teacher evaluations, which are not at issue here.

[11]     The letter does not define creditable service.

responsibility to notify TRS when any of these events occurred. (*Id.*) In fact, Plaintiff continued to receive disability benefits until the time her eligibility for those benefits expired, on February 8, 2002. (October 9, 2002, letter from TRS to Holmes, Ex. M to Def.'s 56.1.)

Citing a May 22, 2001 letter, Superintendent Boyd maintains that the Board gave Plaintiff an opportunity to remediate (Boyd Dep. at 46, citing May 22, 2001 letter from Boyd to Holmes, Ex. A to Def.'s 56.1 Reply)). This letter advised Plaintiff that the Board had "approved this notice to remedy" and had "placed [her] on remediation due to [her] unprofessional and insubordinate conduct," but does not identify the alleged misconduct. (*Id.*) The letter directed Plaintiff to provide a physician's certification by June 4, 2001 and warned that failure to comply would result in the Board's authorization of her dismissal. (*Id.*) Plaintiff denies receiving this letter, however, (Pl.'s Resp. 56.1 ¶ 19), and the copy submitted by Defendants is unsigned.

Plaintiff also submitted a letter from her Chiropractor on July 18, 2001. (Letter from Mark Lagerkvist "to whom it may concern," Ex. I to Def.'s 56.1) The letter stated that Plaintiff was being seen three times a week, with a periodic reexamination being performed approximately every 8-12 weeks. (*Id.*)

**Second Discharge Decision/Review Process**

There were no further communications between the parties until September 19, 2001. In a letter of that date, Superintendent Boyd advised Plaintiff that on October 1, 2001, "[b]ased on the information and documentation that [he had] gathered," he intended to recommend to the Board her suspension and dismissal pending her tenured teacher's hearing. (Letter from Boyd to Holmes, Ex. J to Def.'s 56.1.) The letter did not refer to any previous decisions of the Board or to earlier letters sent by the Board. Superintendent Boyd advised Plaintiff that she had the right to meet with him prior to the Board meeting to respond to the notice of charges; that she was entitled to be represented by legal counsel at that meeting; and that he would provide the Board with a written transcript of the meeting. He did not advise her that she could also appear personally before the

Board at its meeting. Although the letter refers to an attached "Bill of Particulars" detailing the charges, no such document appears in the record.[12]

Plaintiff met with Superintendent Boyd on September 26, 2001, to respond to the charges against her. (Def.'s 56.1 ¶ 38.) Superintendent Boyd has no specific recollection of the meeting and does not know whether the meeting was taped or transcribed. (Boyd Dep. at 34-35.) Defendants have submitted a summary of statements made by Plaintiff at the September 26, meeting, prepared by the Board's legal counsel in preparation for the Board's October 2001 meeting. (October 1, 2001 letter from Camille D. Lee, counsel for the District, to Boyd, Ex. K to Def.'s 56.1.) It is unclear when the Board's attorney prepared the summary or what sources he used, nor is Boyd aware whether Plaintiff herself had an opportunity to review the document. (*Id.* at 37.) Plaintiff contends that Superintendent Boyd never advised her that she could personally appear before the Board to contest her termination. (Pl.'s Add. Facts ¶ 36.)

On October 1, 2001, the Board amended its January 8, 2001 motion to authorize Plaintiff's discharge, voting to authorize her dismissal for job abandonment and unspecified insubordination. (Letter from Board to Holmes, Ex. L to Def.'s 56.1.) As the basis for this decision, the Board's letter details Plaintiff's alleged failure to furnish medical documentation of her need for leave. Neither party has submitted the precise wording of the amendment to the court, nor is there any record concerning the discussion, if any, at the Board's October 1 meeting.[13] As noted previously, Defendants consider October 1, 2001 to be the date of Plaintiff's discharge, (Def.'s 56.1 ¶ 1), while Plaintiff regards the Board as having merely re-confirmed its decision of January 8, 2001. (Pl.'s

---

[12] The court is uncertain how or whether this letter differs from the January 4, 2001 letter from Superintendent Boyd to Plaintiff. As noted earlier, no copy of the January 4 letter appears in the record.

[13] When asked whether the meeting was recorded and whether a transcript was made, Superintendent Boyd responded "I would say yes." (Boyd Dep. at 43.) Nevertheless, Defendants have failed to respond to Plaintiff's request for production of minutes, transcripts or other documents from the Board's October 1, 2001 meeting. (Pl.'s Add. Facts ¶ 32.)

Resp. 56.1 ¶ 1.)

In their Statement of Material Facts, Defendants first describe the Board's October 1, 2001 vote, and then, citing Plaintiff's deposition testimony, Defendants assert that "Plaintiff requested a hearing on her dismissal." (Def.'s 56.1 at ¶ 30, citing Holmes Dep. at 25.)  In fact, however, Plaintiff testified only about the request she made after the January 8, 2001 Board meeting, and there is no evidence in the record that she made a second written request for a hearing pursuant to 105 ILCS 4/24-12 following the October 1, 2001 Board meeting.[14]

Although Defendants assert in their Amended Motion for Summary Judgment that Plaintiff received an evidentiary dismissal hearing, the record contains no evidence concerning that hearing. It appears that Plaintiff did eventually receive a hearing, but only after she filed suit.[15]  Both Superintendent Boyd's and Ms. Holmes's depositions contain passing references to a teacher dismissal hearing. (Boyd Dep. at 45-46 (taken March 15, 2005); Ms. Holmes Dep. at 20 (taken February 28, 2005).  Unfortunately, the record includes no details about the timing, the nature, or the outcome of that hearing.  Rather, Defendants merely assert summarily that Plaintiff "received an appropriate amount of [procedural due] process in her pre-termination meeting . . . in light of her opportunity for a full evidentiary hearing after her dismissal."  (Memorandum of Law in Support of

---

[14]    Defendants repeat this misleading assertion at page 3 of their Memorandum of Law in Support of Amended Motion for Summary Judgment, again citing only Plaintiff's testimony concerning her request for a hearing after the January 2001 decision.

[15]    Early in the course of litigation, Defendants argued that because the Board lacked the statutory power to dismiss a teacher without a final decision of a hearing officer, Plaintiff had not in fact been dismissed and therefore could not bring a procedural due process claim (Memorandum in Support of Defendants' Amended Motion to Dismiss Complaint at 3-4 (filed January 29, 2004).)  Plaintiff may have received a hearing after this court denied Defendants' motion to dismiss. In their original Motion for Summary Judgment, filed April 15, 2005, Defendants asserted that Plaintiff had received a hearing on August 31, 2004, September 14, 2004, and October 18, 2004, about a year after Plaintiff brought suit. That motion has been withdrawn, however, and is no longer part of the record. Although Defendants' Memorandum in Support of Amended Motion for Summary Judgment asserts that Plaintiff received a post-termination hearing, it does not discuss the hearing or provide any details.

Amended Motion for Summary Judgment (hereinafter "Sum. Judg. Mem.") at 9.)

**FMLA Notice**

Plaintiff asserts that Defendants never informed her of her rights under the FMLA. She saw no FMLA notices posted at her school, (Pl.'s Add. Facts ¶ 27), and Defendants have offered no evidence to the contrary. Nor have Defendants identified any other method by which they provided notice of Plaintiff's rights under the Act. It is undisputed that during the relevant time period, the District had no formal procedure for requesting leave: it had no family or medical leave request form, nor any standard physician's certification form to be used in requesting FMLA leave. (Nov. 30, 2004 Mem. from Boyd to staff (hereinafter "Leave Form Memo"), Ex. H to Pl.'s Resp. 56.1.) The District has since instituted more formal procedures. *Id.*[16] Finally, the collective bargaining agreement makes no mention of FMLA rights. (1998-2001 Collective Bargaining Agreement, Ex. D to Pl.'s Resp. 56.1.)

**<u>DISCUSSION</u>**

Defendants now move for summary judgment on multiple grounds. They argue that Plaintiff's FMLA claim must be dismissed because she did not give the School District sufficient notice to trigger their duty to seek verification of whether she suffered from an FMLA-qualifying condition; because the District in fact did seek verification that she was suffering from an FMLA-qualifying condition, but Plaintiff's failure to provide the information requested rendered the district unable to designate her absences as FMLA leave; because Plaintiff failed to comply with her employer's "usual and customary" notice and procedural requirements for requesting leave; and

---

[16]     The Leave Form Memo reads as follows:

We have never had a formal leave request form in the district. We now have one. When requesting family or medical leave, please complete this new form (example attached) which can be obtained from your Principal. Principal/Administrator approval is required first, and the form should then be sent to the office of the Superintendent for processing, including being put on the Board Agenda. There is also a doctor's excuse form that you must have signed by the doctor indicating the length of the leave. Both forms are available in the principal's office.

because she failed to comply with a collective bargaining agreement to which she was a party. In any event, Defendants contend, Plaintiff suffered no injury as the result of the alleged violation of her rights under the FMLA: she received all the leave to which she was entitled, and Defendants' failure to advise her of the FMLA's guarantees did not prejudice her because she cannot identify what action she would have taken, had she known her rights, that would have prevented her discharge.

With respect to Plaintiff's section 1983 claim, Defendants argue that Plaintiff was afforded appropriate due process. Defendants note that Plaintiff had an opportunity to rebut the charges at her hearing with Superintendent Boyd before her dismissal at the Board's October 2001 meeting, that Holmes could request a full post-dismissal evidentiary hearing, and that she did in fact have such a hearing before the Illinois State Board of Education. Finally, Defendants argue that if any of Plaintiff's claims are based on the Board's January 8, 2001 decision to dismiss her, those claims are time-barred.

## I.     Summary Judgment Standard

Summary judgment is appropriate where the record "the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). It is the movant's burden to establish a genuine issue of material fact. *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002). In determining whether this burden is met, the court must construe all evidence and draw all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2025 (1986); *Harrell v. U.S. Postal Service*, 445 F.3d 913, 918 (7th Cir. 2001). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548

(1986).

## II.     Statute of Limitations

Because the date of Plaintiff's discharge is relevant to several of Defendant's arguments, the court begins there.  Defendants argue that if any of Plaintiff's claims are based upon the Board's January 8, 2001 vote to dismiss her, those claims are time-barred.  (Sum. Judg. Mem. at 1.) Although Plaintiff filed suit September 30, 2003, because Plaintiff promptly requested a hearing on the charges underlying the Board's January 8, 2001 decision, that decision operated as a suspension without pay rather than an order of dismissal for purposes of the Illinois Code.  105 ILCS 5/24-12; *Massie v. East St. Louis Sch. Dist. No. 189*, 203 Ill. App. 3d 965, 969-70, 561 N.E.2d 246, 249 (5th Cir. 1990).

Notice that the Board had decided to terminate her might well operate as an event triggering Plaintiff's claim for relief under the FMLA.  *See Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005) (finding "Letter of Removal" an adverse employment action even though later withdrawn); *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 486 (7th Cir. 1992) (under FMLA, employee is terminated when she receives unequivocal notice of the decision).  The statute of limitations for a willful violation of FMLA is three years, however, 29 U.S.C. § 2617(c), and because Plaintiff may argue that the District willfully violated FMLA, Defendant's timeliness objection to this claim is overruled.

Section 1983 claims in Illinois are subject to a two-year statute of limitations.  *Northen v. City of Chicago*, 126 F.3d 1024, 1026 (7th Cir. 1997).  A section 1983 claim accrues when the plaintiff learns or should know that her constitutional rights have been violated.  *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994) (citing *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)). In cases of public employment alleging an inadequate pre-termination hearing, a claim for a violation of procedural due process accrues on the actual termination of employment.  *Sherwin*

*Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 n.5 (7th Cir. 1994).[17]  As noted, Plaintiff filed her complaint on September 30, 2003.  Because Defendants themselves contend that Plaintiff's termination did not take effect until October 2001, the court overrules their timeliness objection to the section 1983 claim as well.

**III.     Interference with Rights under the Family & Medical Leave Act**

Plaintiff alleges that Defendant interfered with her rights under FMLA in two ways.  First, she argues that Defendant terminated her while she was on leave.  (Pl.'s Opp'n. Mem. at 11.) Second, Plaintiff contends that Defendants prejudiced her ability to exercise her rights under FMLA by failing to advise her of those rights.  (*Id.*) Defendants have raised several defenses to the termination claim.  They argue that Plaintiff failed to notify them of her FMLA-qualifying condition and that she failed to comply with the District's "usual and customary" procedures for requesting leave. Defendants also argue that Plaintiff's employment was not protected under FMLA at the time she was discharged because Plaintiff had already received the 12 weeks to which she was entitled. Finally, Defendants contend that Plaintiff was dismissed for failing to comply with her employer's attendance policies and directive to submit further medical documentation.

**A.     Termination**

In seeking to qualify under the FMLA, an employee need not mention the Act or demand its benefits.  *Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 382 (7th Cir. 2003).  But the employee must provide the employer "with enough information to put the employer on notice that FMLA-qualifying leave is needed."  *Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir. 2003). Once an employer has been notified that leave is needed, the employer may seek additional information to verify the employee's eligibility, 29 C.F.R. 825.303(b), and the employee must submit medical certification to establish the existence of a qualifying condition.  *Diaz v. Fort Wayne*

---

[17]     When an employer violates an employee's *substantive* due process rights, a cause of action accrues when the employee learns of an employer's illegal act rather than on the actual date of termination.  *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).

*Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997) (citing 29 U.S.C. § 2613).

Defendants' first argument that Plaintiff failed to notify the District of her condition–requires only brief discussion. Although the court is uncertain whether the District was notified prior to December 2000, there is evidence that Defendants received notice of Plaintiff's condition on December 22, 2000. (Def.'s 56.1, at 3). In the note, dated December 19, 2000, Dr. Cline explained that he was treating Plaintiff for hypertension and that the fatigue she suffered as a side effect of her medication made it difficult for her to work. Plaintiff further explained her condition in her note of December 22, 2000, in which she requested a medical leave of absence until the problems with her medication could be resolved. Construing the facts in the light most favorable to Plaintiff, this court will presume that Plaintiff carried her burden of providing her employer with notice that she suffered from a FMLA-qualifying "serious health condition" as defined in 29 C.F.R. § 825.114.

Defendants argue that even if Plaintiff provided sufficient notice of her condition, she failed to follow her employer's "usual and customary" procedures for requesting leave under the FMLA. Again, construing the facts in Plaintiff's favor, it appears that the School District had no "usual and customary" procedure for applying for FMLA leave. The CBA does not mention any such procedures. The District has offered no written policies concerning the Act, and admittedly did not even create standardized forms for requesting FMLA leave until November 2004. As for Plaintiff's alleged failure to respond to requests for further information, there is no evidence that the District informed her that Dr. Cline's note dated December 19, 2000 was inadequate for purposes of determining her eligibility for FMLA leave. Nor does it appear that the District made any genuine effort to determine whether she qualified for FMLA leave. None of the District's communications refer to FMLA leave in any way, and Defendants did not respond to Plaintiff's written request for medical leave.

Defendants also argue as a defense to Plaintiff's claim that Plaintiff was terminated after her 12 weeks of leave. Again, however, construing the facts in Plaintiff's favor, there are material

disputes on this issue. The Board's meeting minutes themselves suggest that the Board terminated Plaintiff during a FMLA-protected period. The record does not clearly show when this period began, but in light of the Board's lack of any formal FMLA policy at the time, the court will presume that the period did not run concurrent with Plaintiff's sick leave or with any holidays on which teachers were not required to work. Assuming that Plaintiff's sick leave ended October 13, 2000, and that teachers were given a week off for the holidays, Plaintiff's 12 weeks of FMLA leave would have run until at least January 12, 2001. Plaintiff has successfully raised an issue of material fact as to whether Defendants issued a notice of dismissal before she had received the twelve weeks of unpaid leave to which she was entitled.

An employee may still be laid off during the course of her leave, though. 29 C.F.R. § 825.216(b). "With no absolute right to reinstatement, whether an employer violates the FMLA turns on why the employee was not reinstated." *Kohls v. Beverly Enterprises Wisconsin, Inc.,* 259 F.3d 799, 805 (7th Cir. 2001). Defendants claim that Plaintiff was terminated for violations of the attendance policy and refusal to comply with the District's directives. Significantly, however, they have presented no evidence of violations of policy or non-cooperation prior to January 2001. In fact, although the Defendants assert that Plaintiff was fired for job abandonment and insubordination, the minutes from the Board's meeting on January 8, 2001 refer to job abandonment alone. Given the lack of evidence of violations of attendance rules, a reasonable inference is that Plaintiff was dismissed for taking unpaid time off–time she claims she was entitled to under FMLA.

With respect to her termination claim, the issue of whether Plaintiff was terminated during a leave protected by FMLA is the only one briefed by the parties, so having found disputes of fact on this issue, the court concludes that summary judgment must be denied. That said, neither party has directly addressed Plaintiff's current physical abilities, the court notes that Plaintiff has offered no evidence that she would have been able to return to work at the end of her FMLA leave had she

been permitted to do so.  In *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-785 (6th Cir. 1998), the Sixth Circuit concluded that an employee who is not able to return to work at the end of the 12 weeks has no cause of action under FMLA.  *See also Reynolds v. Phillips & Temro Industries, Inc.*, 195 F.3d 411 (8th Cir. 1999).  Judge Filip of this court recognized the same principle in an unreported decision, *Mendoza v. Micro Electronics, Inc.,* No. 02 C 8005, 2005 WL 331585, *4 (N.D. Ill., Feb. 8, 2005) (Filip, J.).  ("Numerous federal courts have held that an employee's rights under the FMLA were not violated when, although the employee may have been terminated from unpaid leave before the end of the FMLA period, there was no dispute that the employee would not have been able to return . . . . at the end of the leave period.") Before Plaintiff can claim interference with her rights under the FMLA, she must show she has an actionable claim by providing evidence that she would have been able to return to work at the end of the FMLA leave period to which she was entitled.

Plaintiff here claims that she was denied the FMLA benefit to which she was entitled, not that she was terminated in retaliation for taking FMLA leave.  In an entitlement action, the Sixth Circuit has advised that courts confronted with a motion for summary judgment "should consider all of the medical evidence bearing on the employee's ability to timely return, not just the evidence available at the time of the adverse employment action."  *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 512 (6th Cir. 2006).  In that court's view, such an inquiry is appropriate because the issue is not the employer's motivation, but "the objective question of whether the employee was capable of resuming his or her duties within the FMLA-leave period."  *Id.*  At this time, Plaintiff Holmes has provided the court with no medical evidence to suggest that she would have been able to return to work.  To the contrary, Plaintiff not only represented herself as disabled, but in her December letter to Dr. Boyd, stated that "[i]f a proper remedy is not found by June, I will retire."  (Letter from Holmes to Boyd, Ex. C to Pl.'s Resp. 56.1).  Defendants did not discharge their burden by showing the court that Plaintiff will not be able to produce any evidence to the contrary, however, *Celotex*, 477 U.S.

at 325 (1986), and before summary judgment is proper on a matter raised by this court, Plaintiff is entitled to respond with medical evidence showing she has an actionable claim.

Defendants' motion for summary judgment on Plaintiff's FMLA wrongful termination claim is denied without prejudice.

## B.     Failure to Advise

In addition to her termination claims, Plaintiff contends that Defendants violated 29 C.F.R. § 825.301, which requires that employers provide employees with general and individualized notice of their rights under FMLA.  That failure is not actionable, however, unless Plaintiff can show she was prejudiced by the lack of notice.  *Ragsdale v. World Wide Wolverine*, 535 U.S. 81, 90 (2002).  "The judge or jury must ask what steps the employee would have taken had circumstances been different."  *Id.* at 90.  *See also Sims v. Schultz*, 305 F. Supp. 2d 838, 845 (N.D. Ill. 2004) (denying motion to dismiss because it was possible the plaintiff could should he was prejudiced by his employer's "failure to designate his leave as FMLA leave")

Plaintiff's argument that she was prejudiced relies on the Third Circuit's reasoning in *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004).  Plaintiff there suffered from serious injuries received in an automobile accident, which resulted in two periods of absence from work: one absence for recovery from the accident and a second absence for recovery from follow-up surgery.  Conoshenti's recovery from both the accident and his follow-up surgery exceeded the 12 weeks of leave available to him under FMLA for that year.  The Third Circuit upheld the grant of summary judgment in favor of the employer on the discharge claim because, even viewing the record in the light most favorable to Conoshenti, it was clear the employer had cause to discharge him when he failed to return to work after his protected leave expired.  Conoshenti also claimed a violation based on his employer's failure to advise him of his rights under the FMLA.  He argued that had he known his rights, he could have rescheduled his follow-up surgery during the next

FMLA period, and not exceeded his available leave time. *Id.* at 145. Recognizing the merit to this theory, the Third Circuit reversed a grant of summary judgment on this claim.

Invoking *Conoshenti*, Plaintiff here asserts that because the District failed to inform her of her rights, "she was denied the opportunity to make informed decisions about her various leave options." (Pls. Mem. Opp'n. at 11.) Apart from this conclusory assertion, Plaintiff has not explained what steps she would have taken to utilize her FMLA entitlement differently had she been aware of her rights, or warned that she must return to work or face termination. In her affidavit she suggests implausibly that had she known her rights, she might have sought accommodation that would have allowed her to return to work:

> If I had known that I could be terminated after 12 weeks despite being on disability leave, I would have sought some other type of protected leave or an accommodation that would have allowed me to return to work despite my condition. Because no one discussed my rights and obligations with me, I was unable to make an informed decision as to my leave options that would allow me to continue employment.

The record simply does not support the notion that lack of information interfered with Plaintiff's ability to exercise her rights under the FMLA. Plaintiff has not alleged that she would have utilized her FMLA entitlement differently, either by taking leave intermittently, *see Ragsdale*, 535 U.S. at 90, or by returning to work and taking more leave during the next FMLA period, *see Conoshenti*, 364 F.3d at 145. In short, Plaintiff has not explained how knowledge of her rights under the FMLA would have improved her ability to make informed choices about her long-term leave options under the CBA. Nor can she plausibly argue that she could have sought accommodation had she known of her rights; she effectively represented herself as unable to work by accepting disability benefits. Accordingly, Plaintiff has not established any prejudice resulting solely from her employer's failure to advise her of her FMLA rights.

The court grants summary judgment on Plaintiff's failure to advise claim.

Plaintiff also urges that Defendants are liable for a violation of 29 U.S.C. § 2619, which requires employers to conspicuously post information about FMLA. But this section does not

authorize a private right of action. Instead, it authorizes a civil fine of $100 payable to the Secretary of Labor. *Blumenthal v. Murray*, 946 F. Supp. 623, 627 (N.D. Ill. 1996). Only the Secretary of Labor may bring an action against an employer for a violation of this provision.

The court grants summary judgment in favor of Defendants on Plaintiff's failure-to-advise claim.

## II.    Due Process Claim

To maintain a due process claim, a plaintiff must show that she suffered a deprivation of a cognizable property or liberty interest and that the deprivation occurred without due process. *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003) (citing *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593 (1972)). Under Illinois law, a tenured school teacher like Plaintiff has a property interest in retaining her employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The Illinois School Code provides that a tenured teacher may only be discharged for cause and is entitled upon request to a hearing prior to discharge. *Panzella v. River Trails Sch. Dist. 26, Cook County*, 313 Ill. App. 3d 527, 532, 729 N.E.2d 954, 958-959 (Ist Dist. 2000) (citing 105 ILCS 5/10-22.4). At any hearing, the teacher has the right to be present, to be represented by counsel, to cross-examine witnesses, and to present her own evidence and witnesses in defense of the charges. *Id.* Those protections comport well with federal due process guarantees that before terminating a government employee who has a property interest in her job, the government must provide: (1) notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to respond to the charges. *Wainscott v. Henry*, 315 F.3d 844, 852-53 (7th Cir. 2003) (citing *Loudermill*, 470 U.S. at 546); *Head of Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794, 804 (7th Cir. 2000).

Plaintiffs are eligible to recover nominal damages for any constitutional violation of procedural due process rights. *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("the denial of procedural due process [is] actionable for nominal damages without proof of actual injury"). Where

the employer can prove that the employee would have been terminated even with adequate due process, however, the damages must flow from the deficiency in process itself rather than from the termination. *Alston v. King*, 231 F.3d 383, 386 (7th Cir. 2000).

Defendants seek summary judgment on Plaintiff's claim that Defendants violated her procedural due process rights by terminating her employment without providing an adequate pre-termination hearing. Plaintiff contends that she was terminated without the opportunity for such a pre-termination hearing. While Plaintiff had an opportunity to present her side of the story at a meeting with Dr. Boyd, she contends this does not satisfy the requirement that an employee be allowed to respond to the charges against her because Dr. Boyd is not a member of the School Board.

A relatively abbreviated pre-termination hearing can be sufficient in combination with adequate post-termination proceedings. *Loudermill*, 470 U.S. at 546, 105 S. Ct. at 1495. On this summary judgment record, however, it is unclear when or even whether Plaintiff received an adequate post-termination hearing. Moreover, even where procedures are ultimately adequate, a delay in the termination process may subsequently become a constitutional violation. *Levenstein v. Salafsky*, 414 F.3d 767, 775 (7th Cir. 2005). A genuine issue of material fact exists with respect to the adequacy of the pre-termination hearing process. Specifically, Defendants have not shown whether Plaintiff was in fact provided an opportunity to respond to the charges against her.

For these reasons, Defendant's motion for summary judgment on Plaintiff's due process claim is denied.

**CONCLUSION**

Defendants' amended motion for summary judgment (29,32) is granted in part and denied in part.  Plaintiff's claim that Defendants failed to advise her of her FMLA rights is dismissed.  With respect to her FMLA termination claim and her procedural due process claim, Defendants' motion is denied.  A status conference is set for Monday, July 17, 2006, at 9:00 a.m.  The parties are encouraged to meet prior to that date to attempt to negotiate a settlement.

ENTER:

Dated:  June 30, 2006

_____

REBECCA R. PALLMEYER
United States District Judge